IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 12-CV-2697-WMA |
| ) | |
| 21st MORTGAGE CORPORATION, ) | |
| a Corporation, ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF'S BRIEF REGARDING "EQUIPMENT" AND "CAPACITY" AS THOSE TERMS RELATE TO 47 U.S.C. §227 OF THE TELEPHONE CONSUMER PROTECTION ACT AND DEFENDANT'S EQUIPMENT THAT WAS IN USE DURING THE TIME PERIOD RELEVANT TO THE INSTANT LAWSUIT

COMES NOW Plaintiff Charles Hunt and hereby moves this Honorable Court to compel Defendant 21st Mortgage Corporation ("21st Mortgage")to properly and completely respond to Plaintiff's discovery requests listed herein in a complete and non-evasive manner, and as grounds therefore, states and shows the Court the following:

I.   THE TELEPHONE CONSUMER PROTECTION ACT IS REMEDIAL

The TCPA is a remedial statute and thus entitled to a broad construction. *See, e.g., Holmes v. Back Doctors, Ltd.*, 695 F.Supp.2d 843, 854 (S.D. Ill. 2010); *see also*

*Gager v. Dell Financial Services, LLC*, 12-2823, p. 9, (3rd Cir. August 22, 2013). As such, it "should be liberally construed and should be interpreted in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950). "[A] remedial statute should be liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443, 111 S.Ct. 865, 868, 112 L.Ed.2d 969 (1991). "As a remedial statute, [the TCPA like TILA] must be construed liberally in favor of the consumer. *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998). It is clear from the case law expounding upon the TCPA it is a remedial statute and is to be read broadly in favor of finding consumer protection from the prohibitions found in the TCPA.

II.  CAPACITY

The code section enacting the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(a) states in relevant part,

> (1) The term "automatic telephone dialing system" means equipment which has the *capacity*—
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.
> 47 U.S.C. §227(a) [emphasis added].

The plain reading of the statute focuses on the "capacity" of the equipment rather than whether or not certain functions of the equipment, such as auto dialing, were actually used by the entity using the equipment to call consumers. The FCC has

also focused on this issue stating the equipment "need only have the '*capacity* to store or produce telephone numbers (emphasis added) * * *'" when engaging in its rulemaking function as arbiter of the TCPA.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (*2003 TCPA Order*) [emphasis in original].  The question of whether the equipment is an automated dialing system is a question of fact. *Buslepp v. B&B Entertainment*, LLC, CV-12-60089, S.D. Fla (May 3, 2012) *citing Satterfiled v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

The testimony of Jim Collins, the person who handles the day-to-day IT functions of Defendant stated in his deposition that the equipment that was in use at all relevant times in this matter *did* have the "capacity" to make autodialed telephone calls[1].  Defendant 21st Mortgage is claiming that since it did not install certain software in its mainframe, a question to which we will never have the answer due to Defendant engaging in spoliation, the mainframe was not an autodialer.  However, that is not what the statute, FCC rulings, and case law bear out with respect to telephone equipment and the TCPA.

---

[1] Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 28:8-29:21.

The "equipment" was the Nortel CS1000 mainframe server to which the five hundred (500) dummy telephone modules were attached[2] <u>not</u> the dummy telephone module alone Defendant brought to the deposition, produced manuals for in discovery[3], and brought to the chambers of this Honorable Court that Defendant has been claiming since the inception of this lawsuit and has represented to Plaintiff and the Court was the only telephone system in use at all relevant times in this matter. This is clearly not true as Plaintiff learned from Defendant's Network Administrator at deposition.

The seminal case on "equipment" and "capacity" as these terms relate to the TCPA is *Satterfiled v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). In *Satterfield*, the District Court granted summary judgment to the Defendant and the Ninth Circuit Court of Appeals reversed the judgment stating in pertinent part,

> The district court focused its analysis on whether the equipment used by Simon & Schuster stored, produced, or called numbers "using a random or sequential number generator." The district court even noted that "the parties' dispute centers on the phrase 'using a random or sequential number generator.'" With this as its focus, the district court held that "the equipment here does not store, produce or call randomly or sequentially generated telephone numbers, the Court grants summary judgment in the Defendants' favor: the equipment at issue is not an automatic telephone dialing system under the TCPA." We find

---

[2] Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 21:2- 21:8.

[3] Defendant did <u>not</u> provide any information about the mainframe server through Plaintiff's Interrogatories and Request for Production, although he requested them.

that the district court focused its analysis on the <u>wrong</u> <u>issue</u> in its determination of what constitutes an ATDS.
*Satterfiled v. Simon & Schuster, Inc.*, 569 F.3d at 950-51 [emphasis added].

The Ninth Circuit relied upon the principles of statutory construction to determine the proper method for evaluating when equipment is an autodialer, stating in relevant part as follows:

> When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator." Accordingly, <u>a system need not actually store, produce, or call</u> randomly or sequentially generated telephone numbers, it need only have the capacity to do it.
> *Satterfiled v. Simon & Schuster, Inc.*, 569 F.3d at 951 [emphasis added].

Three years after *Satterfield* was decided, the Ninth Circuit again had reason to elaborate upon its holding in *Satterfield* in the case of *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012).

In *Meyer*, another Defendant, PRA, claimed it was not subject to the TCPA. "PRA argues that its dialers do not have the present capacity to store or produce numbers using a random or sequential number generator." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d at 1043. However, the Ninth Circuit again clarified that the Defendants were using the wrong standard in claiming they were not subject to the TCPA stating, "As we explained in *Satterfield v. Simon & Schuster, Inc.*, the clear language of the TCPA 'mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using

a random or sequential number generator...' '([A] system need <u>not</u> actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.')." *Id*. [emphasis supplied].

Other cases have also held that the issue is equipment capacity rather than its actual use. *See Blair v. The CBE Group Incorporated*, No. 13-CV-134-MMA, p. 6, Dist. Court. S.D. Cal (May 13, 2013) ("the issue is not whether CBE Group *used* an ATDS, but whether its equipment had the requisite *capacity*.")[emphasis in original]; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1010 (N.D.Ill. 2010) ("Congress included a definition that provides that in order to qualify as an automatic telephone dialing system, the equipment need only have the capacity to store or produce numbers. ('[A] system need not actually store, produce or call randomly or sequentially generated telephone numbers, it only need to have the capacity to do it')")[internal cites omitted]. Jim Collins, Network Administrator for 21st Mortgage, stated that the CS1000 mainframe server used by Defendant during all time periods relevant to the case at bar had the capability to automatically dial telephone numbers with software[4]. Thus, the <u>equipment</u> had the capacity to autodial telephone numbers.

---

[4]Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 29:13-29:21.

III.   SPOLIATION AND CONCEALMENT OF VITAL EVIDENCE

   A.   Defendant has withheld vital evidence from Plaintiff.

Defendant 21st Mortgage has attempted to conceal from Plaintiff and the Court the fact there was more equipment other than the dummy telephone module it produced in its Initial Disclosures and in response to Plaintiff's Interrogatories and Requests for Production[5]. Defendant stated in its Initial Disclosures, particularly in 26(a)(1)(B)(2), the equipment that made up its telephone system consisted of the dummy telephone module units it has presented to Plaintiff and the Court as its <u>entire</u> telephone system[6]. Defendant has withheld, until Plaintiff learned at the deposition of its Network Administrator, the vitally important fact there was a mainframe server in place that actually controlled Defendant's telephone system.

Defendant has not only engaged in spoliation of evidence it has intentionally withheld vital evidence from Plaintiff throughout discovery in this matter. Defendant's Network Administrator, Jim Collins, revealed for the first time at deposition that the dummy telephone modules were not an integral part of Defendant's telephone system contrary to what Defendant has represented to Plaintiff

---

[5] Exhibit B, Initial Disclosures of Defendant 21st Mortgage; *See also* Doc. 12-3.

[6] Exhibit B, Initial Disclosures of Defendant 21st Mortgage.

and the Court since the inception of the instant lawsuit[7]. Defendant was asked in two separate discovery requests to provide Plaintiff with information on all components of its telephone system, yet Defendant has willfully and inexcusably withheld this vital information from Plaintiff. In Plaintiff's Interrogatory numbered nineteen(19), he requested the following information:

> 19. Identify all machines by model, supporting system and dates/time used that were used to make any telephone call in connection with plaintiff, including calls to Plaintiff's husband, friends, and relatives.
> RESPONSE:

To which Defendant responded[8],

> **Defendant objects to this interrogatory as it is not reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant does not know the identity of Plaintiffs husband, friends or relatives (with the exception of his wife, Amelia Hunt) and therefore cannot appropriately respond to this interrogatory. However, without waiving any objection contained herein, at all relevant times, Defendant utilized the Nortel Meridian Modular Telephone system. Please refer to the Nortel Meridian Modular Telephone user manual, a copy of which was attached to Defendant's initial disclosures and stamped C. HUNT 1 through 26.**

Further, in Plaintiff's Request for Production numbered fourteen (14), Plaintiff requested:

> 14. **Produce any and all users manuals and technical manuals for the phone systems, both hardware and software, utilized by Defendant to make the telephone calls at issue in this matter**.

---

[7]Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 34:21-35:9.

[8]*See* Doc. 12-3, pp. 7-8.

To which Defendant 21st Mortgage responded as follows[9]:

> **See the Nortel Meridian Modular Telephone user manual, a [sic] produced along with Defendants initial disclosures (stamped C. HUNT 1 through 26).**

At deposition, Jim Collins admitted there was another key component to this system, the mainframe that runs the entire system[10]. The mainframe is the "brain" of the entire phone system and the "Nortel Meridian Modular Telephones" are just "dummy units" that have no capabilities without being connected the "brain" that is the mainframe[11]. Defendant has purposefully, willfully, and intentionally withheld this vital piece of discoverable evidence from Plaintiff. Whether it is termed a "machine" or a "supporting system" it is a highly relevant and vital piece of discoverable information that 21st Mortgage has purposefully withheld from Plaintiff. There can be no doubt Plaintiff has been extremely prejudiced by the withholding of this vital piece of information.

    B.    <u>Defendant has engaged in spoliation of evidence</u>.

Jim Collins stated at deposition he was never instructed to put a litigation hold on the telephone system at issue, although Defendant knew it was the subject of

---

[9] *See* Doc. 12-3, p 16.

[10] Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 28:16-23.

[11] Id. at 32:22-32:24.

ongoing litigation at the time the telephone system was replaced[12]. Jim Collins as Network Administrator was the person responsible for switching out the telephone system and was the one who should have been instructed to place a litigation hold on the system, but Defendant intentionally did not do so even with the knowledge of ongoing litigation involving the subject telephone system[13]. Jim Collins, the person Defendant should have notified to put a litigation hold on the telephone system while it was "live" did not even know about the instant litigation until the week of his deposition[14].

Spoliation refers to the destruction of evidence or the significant and meaningful alteration of a document or instrument. *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003). Spoliation of evidence that is crucial to a claim or defense constitutes prejudice. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 3368654, at *8(S.D. Fla. Aug. 23, 2010). Spoliation also includes the intentional concealment of evidence. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.* , 736 F.Supp.2d 1317 (S.D. Fla. 2010). Defendant has claimed throughout the pendency of this case that its telephone system was not capable of automatically dialing telephone numbers.

---

[12] Id at 19:24-20:18.

[13] Id. at 20:11-14.

[14] Id. at 20:4-7; 20:15-18.

It is crucial to both Plaintiff's claim and 21st Mortgage's defense that the telephone system was preserved, or at least allowed to be observed, in a "live" state to see what capabilities the telephone system actually had.  Yet, Defendant failed to provide Plaintiff <u>any</u> notice the telephone system was no longer operation until just recently[15].  Prior to that time, Defendant 21st Mortgage never informed Plaintiff the telephone system at issue was going to be taken out of operation and/or was no longer in operation.

In the previous case of Amelia Hunt, the wife of Plaintiff here, there is no question that the lawsuit was filed well before the telephone systems were changed, yet Defendant has failed to ever provide any notice to Plaintiff.  This is likely due to the fact Plaintiff has discovered Defendant has no TCPA policies in place and Defendant was unconcerned whether it was calling consumers on their cellular telephones[16].  Defendant 21st Mortgage has destroyed evidence that is crucial to Plaintiff's claim.  Not only did 21st Mortgage destroy crucial evidence, it attempted to conceal the evidence from Plaintiff.  It is apparent from Jim Collins' testimony that 21st Mortgage was unconcerned about preserving evidence involved in both this case and its predecessor, companion case involving Plaintiff's wife[17].

---

[15]*See* Doc. 19-2, pp. 2-3, Response No. 2.

[16]*See* Doc. 12-3, p. 8, Response Nos. 21-22

[17]Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 20:4-7; 20:11-18.

C.  <u>Plaintiff is permanently prejudiced since he can never see the telephone system in a "live" state</u>.

Plaintiff has been irrevocably and permanently prejudiced. It was crucial to Plaintiff's claims in this matter that the telephone system at issue was kept in live operation until, at least, he had a chance to inspect the system while it was live. However, Defendant failed to put a ligation hold on the telephone system and replaced the system without notice of any kind to Plaintiff, although there was ongoing litigation involving the subject system at all times. Now, due to Defendant's intentional and wanton actions, Plaintiff will never be able to see the "live" operation of the subject telephone system.

This is particularly disturbing when coupled with the facts Plaintiff requested information from Defendant in his discovery requests and Defendant concealed crucial information from Plaintiff, namely the existence of the mainframe server that actually ran the telephone system. The disclosure and production of the dummy telephone module was not a mere oversight. It was an intentional and calculated move on the part of Defendant because it believed it could avoid and hide what it knew to be the real issue - the telephone system it removed from service during pending litigation involving the subject system.

D.  <u>Sanctions are warranted</u>.

Sanctions are warranted when a party fails to preserve evidence that is crucial to a claim or defense of another party. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). Sanctions for spoliation of evidence may include "(1) dismissal of the case [or default judgment against defendant]; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a presumption against the spoliator." *Id.* Further, federal law governs the imposition of spoliation sanctions. *Id.* Spoliation also includes the intentional concealment of evidence. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F.Supp.2d 1317 (S.D. Fla. 2010).

There can be no doubt Defendant failed to preserve crucial evidence in this matter, specifically, the live operation of the telephone system at issue. In addition, and even more heinous, is the fact Defendant attempted to conceal crucial evidence from Plaintiff by failing to disclose or provide any information about the Nortel mainframe that was the "brains" of the entire telephone system. Defendant's claim the dummy units were the <u>entire</u> telephone system by only disclosing information about the dummy units in discovery and by parading around the dummy telephone unit both at the depositions of Defendant <u>and</u> by bringing the dummy units to the hearings before this Honorable Court representing them as the <u>entirety</u> of the

telephone system is a deliberate and unjustifiable attempt to conceal the true, relevant evidence in this case - the Nortel CS1000 mainframe server[18].

The destruction and attempted concealment of this evidence is due to result in sanctions against Defendant. Plaintiff is due to be granted summary judgment on the issue whether Defendant's equipment had the capacity to autodial telephone numbers of consumers such as Plaintiff is this matter. In the alternative, Plaintiff is due a jury instruction on spoliation raising the presumption Defendant's equipment had the capacity to autodial telephone numbers. If the Court does not allow one of the two aforementioned remedies, at least, Defendant should be estopped from asserting its former telephone system was not an automatic telephone dialing system due to its destruction and concealment of crucial evidence.

WHEREFORE, PREMISES CONSIDERED, Plaintiff moves this Honorable Court to enter an Order finding Defendant's equipment had the capacity to autodial telephone numbers. In addition, Plaintiff moves the Court to enter an Order finding Defendant engaged in spoliation and concealment of crucial evidence which worked prejudice to Plaintiff and further granting Plaintiff summary judgment on the issue whether Defendant's equipment had the capacity to autodial numbers rendering it subject to the TCPA.

---

[18] Exhibit A, Deposition of Jim Collins, Network Administrator for 21st Mortgage Corporation, 28:16-23; 31:2-11.

Respectfully submitted this  6th  day  September , 2013.

                                             s/Wesley L. Phillips
                                             Attorney for Plaintiff
                                             Wesley L. Phillips

OF COUNSEL:
PHILLIPS LAW GROUP, LLC
Post Office Box 362001
Birmingham, Alabama 35236
Telephone: (205) 383-3585
Facsimile: (800) 536-0385
Email: wlp@phillipslaw.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served on all parties/attorney(s) of record via either U.S. Mail, postage prepaid, electronic mail, facsimile, and/or electronic mail through the ECM/CF system this  6th  day of  September , 2013.

David M. Wilson
James E. Mitchell, Jr.
WILSON & BERRYHILL
One Metroplex Drive, Suite 250
Montgomery, Alabama 35209

                                             s/Wesley L. Phillips
                                             OF COUNSEL