FILED
2013 Sep-06 PM 04:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES HUNT, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO.:  2:12-cv-2697-WMA |
| | ) | |
| 21ST MORTGAGE CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## DEFENDANT'S BRIEF REGARDING THE SIGNIFICANCE OF EQUIPMENT "DEFINED AS AUTOMATIC TELEPHONE DIALING SYSTEM"

---

COMES NOW the Defendant, 21st Mortgage Corporation ("21st Mtg." or "Defendant"), and hereby files its brief in accordance with this Honorable Court's August 16, 2013 Order.  Defendant, in support of its position, attaches the following exhibits hereto:

DEF. EX. A: Relevant portions from Charles Hunt's deposition transcript (hereinafter "Hunt at _____");

DEF. EX. B: Relevant portions from Jim Collins' deposition transcript (hereinafter "Collins at _____"); and

DEF. EX. C: Relevant portions from Chris Caldwell's deposition transcript (Defendant's 30(b)(6) representative), (hereinafter "Caldwell at _____").

1

This Honorable Court ordered the parties to file a brief with the Clerk justifying the party's position with respect to the significance in this case of equipment defined in 47 U.S.C. § 227 that was not actually used, but that was **capable** of storing or producing telephone numbers to be called, using a random or sequential number generator, and to dial such numbers without regard to whether or not the equipment was actually employed to make any of the telephone calls at issue. It is the Defendant's position that there is no significance in this case because the overwhelming weight of the undisputed evidence shows that equipment utilized by 21st Mtg. did not have such capability.

## ARGUMENT

At the hearing on August 9, 2013, Counsel for the Plaintiff argued that Defendant, although it may not have actually used an "autodialer" to call the Plaintiff, had in its possession equipment that if the proper software was purchased and installed could operate as an autodialer and as such Defendant violated the TCPA. However, as is shown below, this argument misconstrues the definition of "automatic telephone dialing system" as defined by the TCPA and the FCC.

The Telephone Consumer Protection Act ("TCPA") provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> > **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the

called party) using any **automatic telephone dialing system** or an artificial or prerecorded voice--

\*\*\*

**(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(b)(1)(iii) (emphasis added). "The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). There is absolutely no evidence that the Defendant utilized an "automatic telephone dialing system" ("ATDS") in this matter. The issue of whether equipment is an "ATDS" typically comes up in the context of "predictive dialers." There is absolutely no evidence, whatsoever, that 21st Mtg. ever utilized a predictive dialer or had predictive dialing capability.

Congress has charged the Federal Communications Commission ("FCC") with rule-making authority under the TCPA. See 47 U.S.C.A. § 227(b)(2). In 2002, the FCC solicited comments concerning the TCPA's definition of an "automatic telephone dialing system." See In Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 17 F.C.C.R. 17459, 17473—476 (September 18, 2002). The FCC acknowledged that autodialing technology had advanced, more particularly, it stated "[m]ore

3

sophisticated dialing systems, such as predictive dialers and other electronic hardware and software containing databases of telephone numbers, are now widely used by telemarketers to increase productivity and lower costs." Id. at 17474.  The FCC sought comments concerning "whether Congress intended the definition of 'automatic telephone dialing system' to be broad enough to include any equipment that dials numbers automatically, either by producing 10-digit telephone numbers arbitrarily or generating them from a database of existing telephone numbers."  Id. at 17474.  The FCC specifically asked "whether a predictive dialer that dials telephone numbers using a computer database of numbers falls under the TCPA's restrictions on the use of autodialers." Id. at 17475.  After receiving comments, in 2003, the FCC concluded that "predictive dialers" are ATDS under the TCPA.  The FCC defined a "predictive dialer" as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  The FCC acknowledged that while the technology had changed, the basic function of such equipment –" **the _capacity_ to dial numbers without human intervention**"– had not changed. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, 14091-92 (2003) (emphasis added)[1]. The FCC concluded:

---
[1] At the August 9, 2013, counsel for the Plaintiff presented the Court with portions of Rules and

[T]o exclude from [the restrictions on automated and prerecorded calls] equipment that use [sic] predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages. We believe the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented.

Id. at 14092–93.

In 2008, in response to a request for clarification, the FCC affirmed its decision that certain "predictive dialers" are ATDS and again reiterated that "the basic function of such dialing equipment, had not changed—the capacity to dial numbers **without human intervention**." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 73 Fed. Reg. 6041, 6042 (Feb. 1, 2008) (emphasis added). It is clear that the FCC concluded that predictive dialers are governed by the TCPA because like earlier autodialers, predictive dialers have the capacity to dial numbers "without human intervention." There is currently much debate regarding the issue of whether a predictive dialer is an ATDS. [2] However, as is shown more clearly below, there is no evidence that 21st Mtg. ever had equipment that could be defined as an ATDS or a predictive dialer that could be found to be an ATDS.

---

Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg 44144, 4416-44162, which contains the same language cited above.

[2] See In the Matter of Petition for Declaratory Ruling Regarding Non-Telemarketing Use of Predictive Dialers 27 F.C.C.R. 13031,27 FCC Rcd, 13031, 2012 WL 4959378.

The relevant and undisputed facts in this case are as follows: Plaintiff, Charles Hunt ("Hunt") first had contact with 21st Mtg. when he personally contacted it to make a payment on Amelia Hunt's account. (Hunt at 22). Hunt paid on the account with his own personal check from his own personal bank account. (Hunt 22-24). This contact and payment was made by Hunt before he married Amelia Hunt and at that time no one else was on his personal bank account. (Hunt at 9, 26). Hunt continued to call 21st Mtg. and make payments. (Hunt at 29-30). The last call that Hunt alleges was made to him by 21st Mtg. occurred two to three days after August 12, 2011. (Hunt at 122). Therefore, the relevant time period for Plaintiff's TCPA claim is from 2006 until sometime around August 12, 2011.

The telephone system in question in this matter is the Nortel Meridian Telephone System that was in use by 21st Mtg. from "some time in 2000 or 2001 until August 11, 2012." (Doc. 28-1, Affidavit of Scott O'Neal, Collins at 18). The Nortel Meridian Telephone System "was not changed during the time it was used by 21st Mortgage Corporation other than to add additional users and handsets." (Doc. 28-1, Affidavit of Scott O'Neal). A new telephone system was installed by 21st Mtg. on or about August 11, 2012.[3] (Collins at 18; see also Doc. 28-1, Affidavit of Scott O'Neal).

Jim Collins is Defendant's network administrator. (Collins at 4). He was deposed on August 7, 2013. It was his deposition testimony that sparked this

---

[3] So as not to confuse the Court, Mr. Collins, during his deposition, discussed the new ShoreTel Enterprise edition telephone system which has no relevance to this matter on pages 9-16 of his deposition.

6

issue. Collins testified that he was aware of software that can be used with the Nortel Meridian phone system to allow it to do "automatic dialing." (Collins at 22). Collins' definition of "automatic dialing" is "[w]here the user, the person themselves do not have any interaction or choice of the outbound call." (Collins at 12). Collins learned of this software through web searching on his own. (Collins at 22). No one at 21st Mtg. instructed him to do the search and it was only done based on his own "personal curiosity." (Collins at 22-23). There is absolutely no question that 21st Mortgage never purchased or utilized any software that could allow for "automatic dialing." Collins testified that the software would have to be purchased and installed in the main frame and would only be capable of automatic dialing after it was installed. (Collins at 28-29 and 35). Collins testified that the Meridian system never had auto dialing capability or predictive dialing capability. (Collins at 28-29 and 34). Further, no such software, if available, was ever bought or used by 21st Mortgage. (Doc. 28-1, Affidavit of Scott O'Neal). Most importantly, it is undisputed that the Nortel Meridian system required the 21st Mortgage employees to manually dial telephone numbers. (Caldwell at 70 and Doc. 28-1, Affidavit of Scott O'Neal). The Nortel Meridian System installed and used by 21st Mortgage did not have the capability to store or produce telephone numbers to be called, using a random or sequential number generator, nor did it have the capability to dial such numbers. (Doc. 28-1, Affidavit of Scott O'Neal). In addition, the Plaintiff, Charles Hunt,

has no reason to believe that the Defendant was utilizing an automatic dialer, predictive dialer or prerecorded voice. (Hunt at 109-111, 177-178, 181-182).

The evidence is undisputed that the equipment used by 21st Mtg. during the relevant time period did not have the capability to store or produce telephone numbers to be called, using a random sequential number generator, nor did it have the capability to dial such numbers. (Affidavit of Scott O'Neal). Therefore, 21st Mtg. did not have equipment that falls within the definition of an "automatic telephone dialing system" during the relevant time period. In addition, it is undisputed that the equipment at 21st Mtg. required its employees to manually dial telephone numbers. (Caldwell at 70 and Doc. 28-1, Affidavit of Scott O'Neal). There is no evidence to the contrary. It is abundantly clear that the TCPA and the FCC's rules regarding same require that in order for equipment to be classified as ATDS, it must have the capacity to dial numbers without human intervention. The Defendant simply utilized an analog telephone system that required manual dialing and as such the telephone system does not fall under the TCPA.

Defendant anticipates that Plaintiff will cite the ninth circuit opinion Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) to support his position. In Satterfield, the plaintiff filed suit against the publisher and mobile marketing firm claiming a violation of the TCPA arising from a text message sent to plaintiff's cellular telephone advertising the publication of a novel. Satterfield is often cited for the proposition that a "call" under the TCPA includes not only traditional voice telephone calls, but also text messages. One of the issues in

Satterfield was whether the telephone system used by one of the defendants to send a text message was an ATDS under the TCPA. The Satterfield court stated the following regarding whether equipment is an ATDS:

> When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009). Satterfield is distinguishable from the instant matter. In Satterfield there was conflicting testimony regarding the capability of the telephone system. One witness testified that the telephone system in question "stored telephone numbers to be called and subsequently dialed those numbers automatically **without human intervention**." Id. at 951 (emphasis added). Another witness testified "that the system used was not capable of sending messages to telephone numbers not fed to the system...nor was it capable of generating random or sequential telephone numbers." Id. The Court held that due to the conflicting evidence, there was a genuine issue of material fact as to whether the telephone system had the requisite capacity to be considered an ATDS under the TCPA. Id.

Unlike the evidence in Satterfield, there is no conflicting evidence in the instant matter. The evidence is undisputed that the defendant did not have a system with the capacity to store, produce, or call randomly or sequentially generated telephone numbers. There is no testimony or evidence that the Nortel

Meridian telephone system had any capacity to dial numbers automatically without human intervention.

Jim Collins testimony, cited above, does not call into question the lack of these capabilities and/or capacities.   Collins testified that he was aware of software that can be used with the Nortel Meridian phone system to allow it to do automatic dialing.   (Collins at 22).   His definition of "automatic dialing" is "[w]here the user, the person themselves do not have any interaction or choice of the outbound call." (Collins at 12).   His testimony does not, in any way, indicate that the Nortel Meridian telephone system had "the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator."   Nor did it, in any way, indicate that there was any capacity to dial numbers automatically without human intervention.   In fact, the evidence is undisputed that the Nortel Meridian telephone system required manual dialing. (Caldwell at 70 and Doc. 28-1, Affidavit of Scott O'Neal).

There are no Eleventh Circuit or Alabama cases directly on point in regard to this very narrow issue.   However, some cases from other jurisdiction are persuasive.   A decision and order from United States District Court for the Eastern District of Wisconsin, Judge Lynn Adelman, is factually similar to the instant matter.   In Mudgett v. Navy Fed. Credit Union, 11-C-0039, 2012 WL 870758 (E.D. Wis. Mar. 13, 2012), the plaintiff alleged that the Defendant used an ATDS to make calls to her cell phone.   The defendant moved for summary judgment on the ground that the evidence in the record establishes that the calls

to the plaintiff were dialed manually rather than through the use of an autodialer. Id. The facts revealed that the plaintiff's son was a customer of the defendant and had some past due accounts.  The defendant referred the son's accounts to its collections department which began making calls to the son.  Id.  The defendant had difficulties reaching the son at the contact numbers that he had provided, and so the defendant began "skiptracing."  During its skiptracing, the defendant found the plaintiff's cell phone number through an internet search.  Thereafter, three calls were place to the plaintiff's cell phone.  The defendant contended that its agents made all three calls "the old–fashion way—by manually dialing the number on an ordinary telephone—and that therefore it cannot be liable under the TCPA for making a call to a cell phone with an autodialer."  Id. The evidence revealed that the defendant had autodialers, however, the agents testified that they manually dialed the numbers and did not use the autodialers.  Id.  One of the plaintiff's arguments was that the TCPA that defines "automatic telephone dialing system" as equipment that has the *capacity* to autodial and that the defendant's autodialers are connected to the phones that were used to call her cell phone, and that even if the calls to her cell phone were placed manually, those calls were made using equipment having the capacity to autodial.  Id.   The plaintiff contended that the defendant's integrated system qualified as an automatic telephone dialing system under the TCPA because the system as a whole has the capacity to store, produce and dial telephone numbers.   The District Court disagreed and in so doing stated the following:

I have serious doubts as to whether manually dialing a telephone number on a phone that is connected to a computer system capable of autodialing gives rise to liability under the TCPA. Nonetheless, even if it did, [the defendant] would be entitled to summary judgment because [the plaintiff] has not pointed to evidence from which a fact-finder could reasonably conclude that [defendant's agents] placed calls from telephones that were connected to computers capable of autodialing. [Plaintiff] does not submit any evidence from a witness who examined [defendant]'s phone system and determined that [its agents] used phones that were physically connected to computers or autodialers. Instead, she relies on excerpts from [defendant]'s "Phone Skills Manual," which she contends shows that [defendant]'s collections agents' phones are connected to [defendant]'s computer system, which in turn is connected to an autodialer. However, the Phone Skills Manual does not allow a reasonable fact-finder to conclude that the collections agents' phones are connected to [defendant]'s computer system. Rather, as far as the Manual indicates, the collections agents' phones are ordinary desk phones that operate independently of [defendant]'s computer system. Although the Manual seems to assume that collections agents will have computers at their desks in addition to phones, it does not suggest that the phones and the computers are interconnected. Thus, on this record, no fact-finder could reasonably conclude that [defendant's agents] made calls from telephones that were connected to autodialers.

Id. See also Boyd v. Gen. Revenue Corp., 3:11-CV-1243, 2013 WL 866944 (M.D. Tenn. Mar. 7, 2013) (where unlike 21st Mtg., defendant possessed an autodialer, however, evidence showed that defendant only called plaintiff's cellular telephone manually and not call the cellular telephone with the autodialer.  The court stated "[g]iven that all calls to Plaintiff's cellular telephone number were dialed manually, the court concludes that calls to Defendant's cellular telephone were lawful under the TCPA").

Unlike the defendant in Mudgett, there is no evidence here that 21st Mtg. had autodialers.  The evidence is undisputed that the 21st Mtg. did not have

12

autodialers or autodialing capability. 21st. Mtg.'s employees had to manually dial all telephone numbers. (Caldwell at 70 and Doc. 28-1, Affidavit of Scott O'Neal).

Even if this Honorable Court were to find that 21st Mtg. had in its possession equipment defined as an ATDS, the Plaintiff has absolutely no evidence from which a fact-finder could reasonably conclude that the 21st. Mtg. employees placed calls from telephones that were connected to that equipment. In fact, the Plaintiff himself has admitted that there is nothing that indicated to him that he was ever called on his cellular telephone by an auto dialer. (Hunt at 109-111, 177-178, 181-182).

## CONCLUSION

Therefore, it is Defendant's position that there is absolutely no significance in this case of equipment defined in 47 U.S.C. § 227 that was not actually used, but that was **capable** of storing or producing telephone numbers to be called, using a random or sequential number generator, and to dial such numbers without regard to whether or not the equipment was actually employed to make any of the telephone calls at issue.

Respectfully submitted,

_____
DAVID M. WILSON  (ASB-1797-N71D)
JAMES E. MITCHELL, JR. (ASB-9127-E62M)
Attorneys for the Defendant
21st Mortgage Corporation

**OF COUNSEL:**
WILSON & BERRYHILL P.C.
One Metroplex Drive
Suite 250
Birmingham, Alabama  35209
Telephone (205) 252-4441
Facsimile (205) 252-0320
david@wilsonberryhill.com
jimmy@wilsonberryhill.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed with the Clerk of the Court through the CM/ECF Electronic Filing System, which will generate and serve a Notice of Electronic Filing of the foregoing on the following on this the 6th day of September, 2013:

Wesley Phillips, Esquire
Phillips Law Group, LLC
P.O. Box 362001
Birmingham, Alabama  35236
wlp@wphillipslaw.com
wphillipslaw@gmail.com

Of Counsel:

14