IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
CHARLES HUNT,                   }
                                }
     Plaintiff,                 }
                                }      CIVIL ACTION NO.
v.                              }      2:12-CV-2697-WMA
                                }
21st MORTGAGE CORPORATION,      }
a Corporation,                  }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of plaintiff Charles Hunt to compel a Rule 34 Inspection ("Pl.'s Mot."). Defendant 21st Mortgage Corporation opposes the motion ("Def.'s Opp'n"). Plaintiff has filed a reply ("Pl.'s Reply"), and both parties have filed supplemental briefs ("Pl.'s Mem." and "Def.'s Mem.," respectively) regarding the significance of "capacity" versus actual use of certain telephone systems under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. For the reasons that follow, plaintiff's motion is hereby GRANTED with the following limitations.

**Background**

Plaintiff brought this action on August 14, 2012, alleging that defendant made harassing phone calls to him in violation of the TCPA, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, and various provisions of state law.  On

1

July 3, 2013, as part of the discovery process, plaintiff sought to inspect defendant's facilities, including "the facilities wherein [it] performs collections operations," "all telephones and telephone systems used in the collection of accounts," "any computer systems and/or software used," and "any equipment mentioned in or referred to by Defendant in its responses to Plaintiff's discovery or otherwise." Pl.'s Mot. (Doc. 19), Ex. A. Defendant objected to these requests. When the parties failed to resolve the dispute between themselves, plaintiff brought the instant motion in this court.

**DISCUSSION**

It is a widely known (and widely quoted) maxim that "the deposition-discovery rules [under the Federal Rules of Civil Procedure] are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "[E]ither party may compel the other to disgorge whatever facts he has in his possession." *Id.* Thus, plaintiff's motion must be granted so long as he meets the low bar set out for him in Rule 26: his request must be for "nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(2).

The analysis of this low bar is uncomplicated. Among plaintiff's claims is that defendant called him using an illegal automatic dialer, and among defendant's defenses is that, on the contrary, it used manual dialing in all of its communications with

2

plaintiff. Obviously, plaintiff is not required to take defendant's word for it; it is precisely these types of factual disputes for which discovery exists.

Defendant, however, argues that there are at least three reasons why, notwithstanding this apparently simple analysis, plaintiff's motion should be denied: (1) defendant has nothing for plaintiff to see, so any inspection would be fruitless; (2) its system is not covered by the TCPA, and so is irrelevant to this litigation; and (3) plaintiff's request is overly broad. The court turns to each of these arguments in turn.

**1. There Is Nothing To See**

Defendant explains in its opposition brief that, in August, 2012, just days before plaintiff filed this suit and after plaintiff's wife had filed a virtually identical suit in state court, it "replaced the Nortel phone system previously identified with a new and completely different phone system." Def.'s Opp'n at 2. "The Nortel system is no longer in operation," it explained, "and therefore, there is no telephone or telephone system to inspect." *Id.*

Does the court misunderstand the apparent argument, offered with a straight face, that discovery is impossible because defendant has already destroyed any evidence that could possibly be found to incriminate it? No doubt it was this remarkable explanation that set off plaintiff's vehement accusations of

3

spoliation and willful concealment of vital evidence. *See, e.g.,* Pl.'s Mem. at 7-14.[1]  Defendant's claim was overenthusiastic.  The old phone system, including both headsets and the mainframe that drove them, has not been swept under the rug, but only into the aptly named "phone closet."  *See* Collins Dep., Pl.'s Ex. A, at 30:3-4; *see also id.*, at 21:10-11.  Thus, contrary to defendant's argument (but fortunately for defendant nonetheless, given the severe sanctions available for spoliation), there is indeed something to see.

The court agrees with plaintiff that defendant was wrong not to disclose this information earlier, and doubly wrong to apparently offer the hardware for sale, rather than preserving it for purposes of this litigation.  But the court disagrees that plaintiff has been permanently prejudiced and that sanctions are necessary at this point.  It is true that plaintiff can never see the system "in a 'live' state," Pl.'s Mem. at 12, but that is because the system was replaced prior to this litigation, not because it was initially concealed.  Nor, insofar as we know at this time, has the system been permanently altered in any way.  Presumably, if plaintiff wants to see the equipment in action, he can simply plug it in when he arrives at the "phone closet."  With discovery still ongoing, the court concludes that the most

---

[1] Because plaintiff has failed to number the pages in this memorandum, the court refers to the pages as automatically marked by the Electronic Case Filing system.  *See* Doc. 29.

4

appropriate remedy is simply for defendant to now fully disclose this information and provide plaintiff the opportunity to inspect the Nortel phone system.

**2. The Phone System Is Not the Type Covered by the TCPA, and so It Is Irrelevant and There Is No Reason for Plaintiff to See It.**

Defendant next argues that "the evidence is undisputed that the subject telephone system as installed and used by Defendant never had the use of an autodialer, predictive dialer or any recording capability." Def.'s Opp'n at 4. Because the TCPA applies only to "automatic telephone dialing systems," says defendant, the non-automatic system that plaintiff wishes to inspect is not relevant.

Defendant's said argument is unavailing. First, the "automatic telephone dialing system" definition applies only to § 227(b)(1)(A), one of several subsections of the statute. Plaintiff has alleged that defendant has violated that subsection, but he has also alleged that defendant made "numerous calls by illegal pre-recorded messages." Compl. ¶ 53. If true, this behavior would violate § 227(b)(1)(B), which prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," regardless of whether the phone system used was an "automatic telephone dialing system." Plaintiff's inspection may show that defendant's system was capable of delivering artificial or prerecorded

5

messages, and it is relevant and discoverable for that purpose.

Second, defendant's claim that "the evidence is undisputed" is one it must save for summary judgment or some other later stage of this litigation. Indeed, the very purpose of the instant motion is to make the evidence disputed. Plaintiff is not required to accept defendant's claims that all calls were made manually; in short, he is free to argue before a jury, whether rightly or wrongly, that defendant's assertion is a lie or an error, and that in fact defendant did make "numerous calls by illegal automatic dialers and/or predictive dialers . . . at all hours of the day and night," Compl. ¶ 52. Should he choose to do so, he is permitted under the federal discovery rules to obtain information from defendant with which to support his argument. Of course, he may draw back a nub.

While these grounds alone are sufficient to grant plaintiff's motion, the parties focused heavily at the oral hearing on this motion on the legal issue of how an "automatic telephone dialing system" ought to be defined under the TCPA. The plaintiff believes that, even if defendant did make all calls to him manually, it still made the calls using an "automatic telephone dialing system" because its phone system was at least **capable** of automatic dialing. Defendant counters that this interpretation stretches the meaning of the statute too far--that picking up a telephone and dialing someone's number on it is not the type of behavior the TCPA is intended to govern, regardless of whether in some theoretical world

6

the telephone system could have dialed the number itself. Because the parties have already briefed this issue and the issue will no doubt resurface in a future motion, and in the hope that resolving the issue will assist the parties in their ongoing efforts to resolve this case outside of the courtroom, the court will address the statutory definition of an "automatic telephone dialing system" now.

> Section 227(a) provides the following definition:
>
> (1) The term "automatic telephone dialing system" means equipment which has the capacity--
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.

The statutory text plainly focuses on "the capacity" of equipment when defining an "automatic telephone dialing system," and virtually every court to examine the definition has taken the text at face value. *See, e.g., Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2361 (U.S. 2013) ("[T]he focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called.'") (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)) (emphasis in original); *Moore v. Firstsource Advantage, LLC*, 07-CV-770, 2011 WL 4345703, at *8 (W.D.N.Y. Sept. 15, 2011) ("[T]he TCPA itself makes clear that the issue is the equipment's capacity to store and generate such types of calls."); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.

7

Supp. 2d 999, 1010 (N.D. Ill. 2010) ("Congress included a definition that provides that in order to qualify as an automatic telephone dialing system, the equipment need only have *the capacity* to store or produce numbers.") (emphasis in original). This interpretation is only strengthened by the interpretational principle that, "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 12-2823, 2013 WL 4463305 (3d Cir. Aug. 22, 2013). Indeed, even defendant's prized case, *Mudgett v. Navy Fed. Credit Union*, 11-C-0039, 2012 WL 870758, at *2 (E.D. Wis. Mar. 13, 2012), granted summary judgment to a TCPA defendant only because the plaintiff had "not pointed to evidence from which a fact-finder could reasonably conclude that [defendants] placed calls from telephones that were connected to computers capable of autodialing." It was the lack of evidence **at the summary judgment stage**, not the statutory definition, that sank the plaintiff's case. Surely defendant cannot point to the same lack of evidence **at the discovery stage** of this case. The argument is deviously circular: defendant hopes that plaintiff cannot obtain information through discovery because he has no evidence, and cannot have evidence because he has not obtained sufficient information in discovery.

While the court has no trouble adopting the rule of the Ninth Circuit and other district courts, the instant case would require

8

the court to stretch the TCPA definition yet a step further.  In those earlier cases, the telephone systems at issue were fully equipped and ready to automatically dial numbers at a moment's notice, and so had the required "capacity" to meet the "automatic telephone dialing system" definition, regardless of how they were actually used.  Here, the phone system was (and is) in its present state incapable of automatic dialing.  Plaintiff's argument is that certain software could have been installed onto defendant's system which would have made automatic dialing possible.  *See* Collins Dep., Pl.'s Ex. A, at 22:4-12.

The problem with this reasoning is that, in today's world, the possibilities of modification and alteration are virtually limitless.  For example, it is virtually certain that software could be written, without much trouble, that would allow iPhones "to store or produce telephone numbers to be called, using a random or sequential number generator, and to call them."  Are the roughly 20 million American iPhone users subject to the mandates of § 227(b)(1)(A) of the TCPA?  More likely, only iPhone users who were to download this hypothetical "app" would be at risk.

The court therefore holds that, to meet the TCPA definition of an "automatic telephone dialing system," a system must have a **present** capacity, at the time the calls were being made, to store or produce and call numbers from a number generator.  While a defendant can be liable under § 227(b)(1)(A) whenever it has such

9

a system, even if it does not make use of the automatic dialing capability, it cannot be held liable if substantial modification or alteration of the system would be required to achieve that capability.

This conclusion does not affect the court's decision on the instant motion, inasmuch as plaintiff may still inspect defendant's equipment for the reasons stated earlier in this opinion, or in order to verify defendant's claim that the equipment did not have the required software for automatic dialing or easy installation of such. However, both parties must conduct all further discovery and subsequent litigation in light of the "automatic telephone dialing system" definition explained here.

**3. Plaintiff Wants Too Much**

Defendant's final argument is that the discovery requested by plaintiff is "overly broad, unduly burdensome, oppressive, immaterial, expensive, and is not reasonably calculated to lead to the discovery of admissible evidence." Def.'s Opp'n at 2. The court agrees that, read literally, plaintiff's request to inspect "the facilities wherein 21st Mortgage Corporation performs collections operations" is too broad. An order compelling discovery is not equivalent to a police search warrant, and plaintiff is not to scour the entirety of defendant's property and files in search of evidence.

With this in mind, plaintiff's inspection shall be limited as

follows:

   1.   Plaintiff and his chosen expert may inspect any part of the Nortel Meridian Telephone System that was in use by defendant at the time of the events that gave rise to this litigation, along with any other telephone system that was in use at that time.  This shall include the dummy modules, the mainframe, any related software in defendant's possession, and any other equipment related in any way to defendant's business telephone calls.

   2.   Subject to the limitations imposed by the privacy interests of third parties, plaintiff may observe defendant's employees in the act of making telephone calls to its customers.  In the alternative, defendant may simulate such a telephone call for plaintiff's benefit, but such simulation must use equipment identical to that used in defendant's actual business calls and must follow exactly defendant's normal procedures.

   3.   To the extent plaintiff has any plans more concrete than his ambiguous request for "[i]nspection of any equipment mentioned in or referred to by Defendant in its responses to Plaintiff's discovery or otherwise," defendant is to provide that opportunity, as demanded by the Federal Rules, so long as the information is relevant to any party's claim or defense.

   4.  In all future discovery disputes, the parties are reminded that all discovery motions filed in this court "must include a certification that the movant has in good faith conferred or

attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The rule reflects the Rules' preference for flexible, cooperative discovery without the need for officious court oversight. The requesting party is to narrowly tailor its requests to nonprivileged information it genuinely needs and plans to use at trial; the receiving party is to honor those requests. Neither party is to use the process for any ulterior strategical motive. If the parties prefer to fight out their disagreement, the court is happy to referee--but the parties must wait for the opening bell. Rule 37 also provides a wide range of sanctions for violations of the discovery rules.

**Conclusion**

In summary, plaintiff's Motion to Compel (Doc. 19) is hereby GRANTED, subject to the limitations described above. The scheduling order originally entered on November 5, 2012, and amended on July 10, 2013, is hereby AMENDED as follows:

Discovery SHALL BE CONCLUDED no later than October 18, 2013, at 4:30 PM. Dispositive motions SHALL BE FILED no later than November 4, 2013, at 4:30 PM.

DONE this 17th day of September, 2013.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE