```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION

CHARLES HUNT,                   }
                                }
     Plaintiff,                 }
                                }
                                }      CIVIL ACTION NO.
v.                              }      2:12-CV-2697-WMA
                                }
21ST MORTGAGE CORPORATION,      }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of defendant, 21st Mortgage Corporation, to exclude the expert testimony of Robert Biggerstaff as evidence in the upcoming trial of the above-styled case. In this court's opinion and order of February 4, 2014 (Docs. 57-58), the court determined that the Biggerstaff testimony would not be considered for purposes of summary judgment because plaintiff had failed to make the expert disclosures required by Federal Rule of Civil Procedure 26. In its order of March 12, 2014 (Doc. 63), however, the court ruled that plaintiff could cure these procedural deficiencies for purposes of the trial phase. In so ruling, the court was mindful that allowing the expert to testify would trigger a potentially costly re-opening of discovery to provide defendant an opportunity to prepare a response to Biggerstaff, including an opportunity to retain a rebuttal expert. To assure that this expense would be incurred only if absolutely necessary, the court ordered immediate briefing on the question of whether Biggerstaff's

1

testimony meets the requirements of the Federal Rules of Evidence. With those supplemental briefs (Docs. 65-66) now in hand, the court concludes that Biggerstaff's testimony is admissible under the Federal Rules of Evidence.

**Background**

At issue in this case is whether defendant is liable to plaintiff for phone calls it allegedly made to plaintiff in connection with a debt owed by plaintiff's wife.  Plaintiff has two claims for relief that have survived summary judgment and on which the two parties are now preparing for trial: a state law claim for invasion of privacy, and a federal claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  A key question for the latter claim is whether calls made by defendant were made using an "automatic telephone dialing system," as defined by the Act.  It is this question that Biggerstaff's testimony attempts to address.  The relevant facts regarding Biggerstaff's qualifications and his proposed testimony are these:

Biggerstaff received a bachelor's degree in chemical engineering in 1987. Biggerstaff Dep. at 26-27. His first job was in the IT department of a company called North America Garment Finishers, Inc., where he was "[r]esponsible for all computer systems, network design, operations, hardware installation and maintenenance and applications development." *Id.* at 28. The job included responsibility for an automated telephone system that the

company used to alert its employees of order updates and the like. *Id.* at 32.

After leaving the company, Biggerstaff spent several years as an independent IT consultant. *Id.* at 37. He provided consulting for at least eight companies, including other garment companies, engineering firms, law firms, video rental stores, and a travel agency. *Id.* at 43-44. His worked included "[p]retty much anything having to do with computers, networks, communications, [and] CTI, which is computer telephony integration." *Id.* at 39. Biggerstaff estimates that 10% of his consulting work revolved around telephone systems. *Id.* at 45.

In 1992, Biggerstaff began a regular job at Westvaco, a paper and chemicals company. *Id.* at 60. Like his previous jobs, his duties included "[p]retty much everything having to do with computers, computer telephone integration and the computer integration with process control." *Id.* at 62. The work included "both [managing] hardware . . . and writing custom software." *Id.* At one point during his deposition, Biggerstaff estimated that his work at Westvaco concerned the company's telephone system "about 15 percent" of the time, *id.* at 45, while at another he estimated "an average of 10 percent or less."

Biggerstaff worked at Westvaco for more than 10 years before leaving in 2003. *Id.* at 84. Since then, he has returned to independent consulting. Though he still sometimes provides

3

standard IT consulting, he is now most often retained as a "forensic expert, data recovery expert or expert witness." *Id.* at 87. He has been "retained as a computer expert in over 200 court cases." Biggerstaff Report ¶ 7.

Based on these qualifications, plaintiff retained Biggerstaff to examine defendant's telephone system for the purpose of determining whether the system fell under the "automatic telephone dialing system" definition provided by the TCPA. Ideally, Biggerstaff would have examined the actual system in live action, but defendant had dismantled the entire system and replaced it with a new one directly after being sued. Plaintiff has understandably protested throughout this litigation that defendant should face immediate sanctions for spoliation, but the court has thus far avoided such an extreme remedy. The court hoped that defendant's error could be remedied by digging out from the garbage its old system and making its best effort to recreate its old calling method for plaintiff and his expert's examination. Disappointingly to plaintiff and to the court, this so-called "best effort" was, apparently, to allow Biggerstaff to see, *in toto*:

- A small, unused office where defendant's old equipment was stacked, offline and in fact not even plugged in. Pl.'s Br. at 2.

- A "demonstration" in which defendant's "litigation coordinator" held up a numeric keypad and pantomimed dialing numbers on it. *Id.* at 3.

4

- A small group of veteran debt collection employees at work using the new system. *Id.* at 3-4.

Despite the meagerness of this examination, Biggerstaff scraped together an expert report summarizing his findings. He concludes that it is unlikely that defendant made debt collection calls manually for two reasons: (1) the veteran employees lacked the skill at manual dialing that he would expect from employees who had practiced it, *see* Biggerstaff Report ¶¶ 17-21; and (2) defendant's facilities to his eye contained an IT infrastructure that allowed for much greater efficiency if automatic dialing were used, *see id.* ¶¶ 22-26.

At issue is whether these conclusions meet the expert testimony standard of Federal Rule of Evidence 702.

**Analysis**

Federal Rule of Evidence 702, as modified to incorporate the holdings of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 (1993) and its progeny, *see* advisory committee's note on 2000 amendments, provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles

and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 has a "liberal thrust" and a "general approach of relaxing the traditional barriers to opinion testimony." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) (quoting *Daubert*, 509 U.S. at 588). The "specialized knowledge" required by the Rule need not take the form of any traditionally learned scientific discourse.  As numerous courts, along with the text of the rule itself, recognize, expert opinion based on practical experience is equally admissible as that based on academic science:

> While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status.  In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, *experience*, training, or education."  The Committee Note to the 2000 Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony."

*United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004) (emphasis and omission added by *Frazier*) (citing Fed. R. Evid. 702; Fed. R. Evid. 702 advisory committee's note (2000 amends.)); *see also Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) ("The beneficiaries argue that Skipper's testimony is unreliable because '[e]xperience alone . . . can never form the basis for expert testimony,' but this argument fails.") (alteration and omission in original).  Indeed, courts in this circuit have accepted experts ranging as highfalutin as an

6

earthen embankments expert with a Ph.D. from MIT and a long career studying earthen embankments, *see Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1185 (11th Cir. 2013), and as low-falutin as a marijuana expert with with no education or training other than a claim that he "had smoked marijuana over a thousand times," *United States v. Johnson*, 575 F.2d 1347, 1360 (5th Cir. 1978)[1].

Whether an expert is more like a master engineer or a master drug addict, "what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Frazier*, 387 F.3d at 1262. The judge must fulfill this "gatekeeping role," *Daubert*, 509 U.S. at 597, "'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). The judge properly keeps the gate if he makes sure that each of the four elements of Rule 702 are met: the expert must have special knowledge that would be helpful to the trier of fact; he must base his opinion on facts and data; he must employ a reliable method; and this method must be reliably applied to the facts and

---

[1] *Johnson* is binding on this court as an opinion of the "old Fifth" Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

data. *See* Fed. R. Evid. 702. "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . . ." *Frazier*, 387 F.3d at 1260.

The *Daubert* court suggested a few factors, including testability, peer review, and acceptance in the scientific community, that could help trial courts weigh reliability, *see Daubert*, 509 U.S. at 592, but in light of the vast variety of types of experts, "[t]his list . . . is not exhaustive." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010). "The judge can 'neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*,'" because "[t]oo much depends upon the particular circumstances of the particular case at issue." *Brown*, 415 F.3d at 1268 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). Indeed, the Eleventh Circuit has repeatedly stressed that a district judge "must have considerable leeway," *Frazier*, 387 F.3d at 1262 (quoting *Kumho Tire*, 526 U.S. at 152), and "broad latitude," *Brown*, 415 F.3d at 1268 (quoting *Kumho Tire*, 526 U.S. at 153), to tailor its *Daubert* analysis to the specific context of the expert testimony asserted.

With these standards in mind, the court cannot rule in the abstract on whether Biggerstaff is an "expert" or not.[2] Instead,

---

[2]To the extent Biggerstaff's general, abstract "expert" credentials are important, the court notes that Biggerstaff has

the court must first identify precisely what it is that Biggerstaff intends to say, and then determine whether such testimony meets the Rule 702 requirements. Biggerstaff plans to offer two conclusions at trial. First, he intends to testify that, against the background of the normal practices of the many other call centers he has seen in his career, the practices shown him at 21st Mortgage contain an "ergonomic incongruity." Biggerstaff Report at 7. In short, the agents at 21st Mortgage dialed numbers using an extremely slow click-and-drag method with a computer mouse, while all the manual dialing Biggerstaff has witnessed at other companies involved pecking out the numbers on a 10-digit keypad with practiced rapididy. *See id.* ¶¶ 17-21. Presumably, plaintiff hopes that the jury will draw the inference that what 21st Mortgage showed Biggerstaff was not its true practice. Second, Biggerstaff intends to testify that he observed a "technological incongruity." He intends to testify that 21st Mortgage's facilities and infrastructure are generally well-designed, modern, and sophisticated. *Id.* ¶ 22. Were Biggerstaff an IT consultant for

---

already been allowed to testify as an expert by numerous other courts. *See Jackson Five Star Catering, Inc. v. Beason*, 10-10010, 2013 WL 5966340, at *1 (E.D. Mich. Nov. 8, 2013) (citing Biggerstaff's expert report in opinion without *Daubert* analysis); *Savanna Grp., Inc. v. Trynex, Inc.*, 10-CV-7995, 2013 WL 66181, at *4 n3. (N.D. Ill. Jan. 4, 2013) ("Defendants do not challenege Mr. Biggerstaff's report under *Daubert* or Federal Rule of Evidence 702"); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 139 (N.D. Ill. 2009) (finding that Biggerstaff testimony met Rule 702 standard); *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909, at *3 (N.D. Ill. Oct. 14, 2009) (same).

21st Mortgage, as he has been for other companies, he would criticize his client's enormously inefficient and wasteful use of all that hardware simply for old-fashioned hand-dialing. *Id.* ¶¶ 23-26. Presumably, plaintiff hopes that the jury will draw from this the inference that 21st Mortgage was not really so wasteful as all that, and in fact made full use of its hardware to efficiently autodial numbers.[3]

Biggerstaff's testimony meets the Rule 702 standard. Biggerstaff has "specialized knowledge [that] will help the trier of fact," Rule 702(a), because, as a former IT professional who spent years consulting companies on setting up network systems, including phone dialing systems, he has a much better sense of what a "normal" network and telephone system setup looks like than a layperson would. His testimony is "based on sufficient facts or data," Rule 702(b), because he went to the 21st Mortgage facility

---

[3]The parties devote ample space to an alleged third piece of opinion testimony: that the 21st Mortgage hardware, which includes a "CS1000 chassis" and "Dell server," is capable of generating random numbers. *See, e.g.,* Def.'s Br. at 3 (labeling this the "capacity opinion"). But this is not so much part of Biggerstaff's opinion testimony as it is a fact upon which the opinion is based. The fact that a computer can generate random numbers is practically worthy of judicial notice, and regardless has long since been conceded by defendant. *See, e.g.,* Def.'s Br. Regarding "Capacity" (Doc. 30), at 7 (admitting it is "aware of software that can be used with the [previous] phone system to allow it to do 'automatic dialing'"). Indeed, it was the fact that virtually any computer can generate random numbers that led this court to narrow the TCPA question here to whether defendant had installed the software needed to enable this function. *See* Mem. Op. of September 17, 2014 (Doc. 31), at 9.

and observed first-hand everything **that 21st Mortgage allowed him access to**, including, as relevant to the two general conclusions he plans to testify to, the server previously used by 21st Mortgage and the call-making simulation.  He used "reliable principles and methods," Rule 702(c), because his "method" is a simple process of comparison:  he observed 21st Mortgage's alleged call-making procedure, and then pointed out practical differences between it and the normal practices of the many other call centers he has seen.  For the same reason, Biggerstaff "reliably applied," Rule 702(d), those principles to this case.

There are two undisputed facts that further militate to the opening of the *Daubert* gate for Biggerstaff.  The first is that this is the first case the court can find in which an expert has been needed and offered on such a unique issue.  In other words, the first proposed expert on a subject should be granted more leeway than an expert on the same subject twenty cases down the road.  The second fact important to this inquiry is that it was the protesting defendant that deprived Biggerstaff of the full toolkit upon which to exercise his expertise.  To limit an expert's access to the information upon which to formulate a complete and persuasive expert opinion can't form a basis for criticizing a less comprehensive opinion.[4]

---

[4]The court grows increasingly frustrated with defendant's arguments that Biggerstaff had insufficient data because he did not see the old system in its live state, along the lines of,

11

Defendant errs simultaneously by overestimating and by underestimating Biggerstaff's testimony. It overestimates by imagining that there is some advanced, quantitative scientific analysis at work. It underestimates by assuming that just because Biggerstaff is ill-equipped to offer that kind of advanced,

---

*e.g.*:
- "[All Biggerstaff saw was] what he believed to be a desktop computer in the room where the CS1000 is located. The outer shell of that desktop computer contained labeling that indicated it was a Dell Optiplex Computer which he admits is a desktop computer." Def.'s Br. at 13.
- "Mr. Biggerstaff has no idea whether the computer [he was shown by 21st Mortgage] was hooked to the CS1000 when it was in operation. He has no idea whether the computer even worked at any time. . . . [He] has no idea whether the computer had ever been substantially changed in any way. He has no idea about what the computer was ever used for." *Id.* at 14-15.
- "Mr. Biggerstaff has reviewed no data and did not analyze the telephone system in place at 21st Mtg." *Id.* at 20.
- "The employees that Mr. Biggerstaff observed were making outbound calls with the new telephone system in place at 21st Mtg.[,] the Shortel system[,] which has absolutely no relevance to this matter." *Id.* at 22.

In fact, the Shortel system does have relevance to this matter, namely that defendant installed the Shortel system in place of the old system immediately after plaintiff's wife brought a TCPA lawsuit, thus flagrantly destroying evidence crucial to this case and practically begging the court for spoliation sanctions. The court generously attributed this destruction to mere stupidity, rather than to willfulness, and therefore permitted defendant to cover its error simply by providing plaintiff access to the dismantled equipment in as close to its previous condition as possible. *See Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) ("In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. 'Mere negligence' in losing or destroying the records is not enough . . . .") (emphasis added) (citation omitted).

The court regrets its generosity more and more with each new round of briefing in which defendant gleefully uses its own spoliation efforts as an argument for why it must win.

quantitative scientific analysis, he is not an "expert."  As explained above, an "expert" under the Federal Rules of Evidence can be qualified based on any kind of special experience.  Working for many years as an IT consultant provides special experience to comment on the differences between various IT setups.  Perhaps defendant has been distracted by the existence of Biggerstaff's impressive, but irrelevant, chemical engineering degree, or by phraseology like "ergonomic incongruity."  The court agrees that there is a "morphological incongruity" between the complexity implied by the phrase "ergonomic incongruity" and the simplicity of what it actually means, that is, that 21st Mortgage's alleged practices involved painfully slow dialing using a computer mouse, while any decently skilled telemarketer would dial much more quickly using a numeric keypad.  But the court does not agree that the simplicity of this ultimate conclusion means that the testimony is inadmissible.  Indeed, the fact that the conclusion is simple helps the court understand it to the degree necessary to ensure its *Daubert* "reliability."

This does not mean that Biggerstaff's testimony is not susceptible to attack at trial.  Could defendant be right, for example, that Biggerstaff has been permanently prejudiced against TCPA defendants by a bad experience his own grandfather had with telemarketers?  *See* Def.'s Br. at 9-11.  Might it be significant that Biggerstaff worked as an IT professional mostly in the 1990s,

13

and only once worked with the CS1000 chassis?  *See* Def.'s Br. at 5-8.  Might that explain the difference between what Biggerstaff saw at past companies and what he saw at 21st Mortgage?  Perhaps so, but credibility determinations and the choice of how much weight to give a witness's testimony are reserved to the jury.  "[The *Daubert*] gatekeeping role . . . 'is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.''" *United States v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999)) (quoting in turn *Daubert*, 509 U.S. at 596).  If defendant wishes to challenge Biggerstaff's testimony further, it must use one of these methods to do so.

**Conclusion**

For all the foregoing reasons, the court finds that Biggerstaff is qualified as an expert under Federal Rule of Evidence 702 and may offer opinion testimony at the upcoming trial in this case.  Defendant's motion to exclude Biggerstaff's testimony (Doc. 65) is DENIED.

If defendant wishes to retain a rebuttal witness, it shall do so and shall make all disclosures related to that witness **no later than May 9, 2014.**

If plaintiff wishes to depose defendant's expert, he shall do so **no later than May 23, 2014.**

This case shall be set for trial as soon after May 23 as is practicable.

DONE this 25th day of April, 2014.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE