FILED
2014 Aug-14 PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES HUNT, )<br>)<br>Plaintiff, )<br>) <br>v. )<br>)<br>21st MORTGAGE CORPORATION, )<br>a Corporation, )<br>)<br>Defendant. ) | Civil Action No.:<br>2:12-CV-2697-LSC |

PRETRIAL ORDER

A pretrial conference was held in the above cases on August 14, 2014, wherein, or as a result of which, the following proceedings were held and action taken:

1. <u>Appearances</u>. Appearing at the conference were:

    Wesley Phillips for the Plaintiff, Charles Hunt.

    M. Stan Herring for the Plaintiff, Charles Hunt.

    James E. Mitchell, Jr., for Defendant 21st Mortgage Corporation.

2. <u>Jurisdiction and venue.</u> Subject matter jurisdiction exists under 28 U.S.C. §1331 by reason of federal question jurisdiction. Personal jurisdiction and venue are not contested.

3. <u>Parties and trial counsel</u>. Any fictitious defendants are hereby DELETED. The parties before the court are correctly named as set out below and the designated trial counsel

for the parties are as set out below:

|  PARTIES | TRIAL COUNSEL |
|---|---|
| Plaintiffs:<br>Charles Hunt | Wesley L. Phillips,<br>M. Stan Herring,<br>John G. Watts |
| Defendants:<br>21st Mortgage Corporation | David M. Wilson,<br>James E. Mitchell, Jr. |

4. <u>Pleadings</u>. The following pleadings (with the modifications contained in this order) have been allowed: All pleadings filed by the plaintiff and all pleadings filed by the defendant in this matter.

5. <u>Statement of the case</u>.

(a) <u>Narrative</u>.  This case involves telephone calls to Plaintiff Charles Hunt's cellular telephone to collect on a loan agreement entered into between Mr. Hunt's wife and her son for the purchase of a mobile home. Charles Hunt has sued 21st Mortgage Corporation for making calls to his cellular telephone concerning that account. Charles Hunt claims violations of the Telephone Consumer Protection Act ("TCPA") and that 21st Mortgage invaded his privacy with the calls.  21st Mortgage Corporation denies it is subject to the TCPA and that it invaded Charles Hunt privacy by calling his cellular telephone to collect on the account.

(b) <u>Undisputed Facts</u>.  In June of 2000, Bradley Faile (Plaintiff's wife's son) entered into a Manufactured Home Retail Installment Contract, Security Agreement and Disclosure Statement with Chase Manhattan Bank for the purchase of a mobile home.

Plaintiff's wife was a co-signor on the Installment Contract with her son.  Plaintiff was not a co-signor on the Installment Contract. Defendant asserts it began servicing the Installment Contract in January of 2005.  Plaintiff Charles Hunt made some payments on the Installment Contract by calling Defendant.  Mr. Hunt claims that as a part of its collection efforts, 21st Mortgage contacted him by placing calls to his cellular telephone.  Plaintiff alleges the calls made by 21st Mortgage to his cellular telephone violated the Telephone Consumer Protection Act (TCPA).  Defendant denies that any calls it made to Plaintiff violated the TCPA. Mr. Hunt also asserts that 21st Mortgage Invaded his Right to Privacy when it attempted to collect this debt through its calls to him and by contacting his relatives and other third-parties as a part of its attempt to collect the debt.  Defendant denies that it invaded Plaintiff's right to privacy.

(c) Plaintiff's positions.

1. Telephone Consumer Protection Act – Plaintiff Charles Hunt seeks damages for 21st Mortgage's violations of the TCPA, codified at 47 U.S.C. § 227.  The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. *Meyer v. Portfolio Recovery Associates, LLC*, 696 F.3d 943, 949 (9th Cir. 2012) *citing* 47 U.S.C. § 227(b)(1).  "The term 'automatic telephone dialing system' means 'equipment that has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.'" *Id*. *citing* 47 U.S.C. § 227(a)(1).  "PRA argues that its dialers do not have the *present capacity* to store

or produce numbers using a random or sequential number generator. As we explained in *Satterfield v. Simon & Schuster, Inc.*, the clear language of the TCPA 'mandates that the focus must be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Id.* (internal cites omitted) (emphasis added).

As a part of its collection efforts, 21st Mortgage repeatedly placed calls to Mr. Hunt's cellular phone using an auto-dialer or predictive dialer as that term is defined under the TCPA. Plaintiff's expert, Robert Biggerstaff, testified at deposition that he knows from his experience, training, and research that the Dell Optiplex server at issue in this matter he observed at 21st Mortgage contained a random number generator. Biggerstaff testified one of the capabilities of the Dell Optiplex server used by 21st Mortgage is the ability to autodial telephone numbers.

Using his personal experience, training, and knowledge combined with what he was allowed to observe and inspect at 21st Mortgage, due to 21st Mortgage's spoliation of the old telephone system at issue, Biggerstaff concluded the telephone system used by 21st Mortgage had autodialing capabilities. These calls were made to Mr. Hunt's cell phone without his express permission or consent. 21st Mortgage continued to call repeatedly after being instructed to stop calling Mr. Hunt's cellular telephone. Mr. Hunt seeks damages against 21st Mortgage under the TCPA for $500 per call or $1500 per call if 21st Mortgage's conduct is determined to willful by the trier of fact.

2. <u>Invasion of Privacy</u> -   Plaintiff Charles Hunt seeks compensatory and punitive

damages for 21st Mortgage's invasion of his privacy. 21st Mortgage engaged in aggressive efforts to collect a debt from Charles Hunt that he did not owe.

The Alabama Supreme Court has stated a person's privacy is invaded when a person's physical solitude or seclusion is intruded upon by another. *See Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174 (Ala. 1995). "One may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or *by an invasion of one's 'emotional sanctum'*; the law prohibits a wrongful intrusion into either of these areas of privacy. *Phillips v. Smalley Maint. Servs., Inc.*, 435 So.2d 705, 708 (Ala. 1983) (emphasis added).

Further, the Alabama Supreme Court adopted the Restatement (Second) of Torts § 652B (1977) in *Phillips*. *Id.* at 708-11.  Comment d. to the Restatement (Second) of Torts § 652B (1977) specifically talks about debt collection with respect to the invasion of a person's privacy.  Comment d. states a person's privacy is invaded "*when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff.*" Restatement (Second) of Torts § 652B, cmt. d. (1977) (emphasis added).

When Mr. Hunt asked 21st Mortgage to stop calling him, instead of ceasing the calls and collection efforts against Mr. Hunt, 21st Mortgage increased the frequency of calls to his cellular telephone. 21st Mortgage also contacted third parties who knew Mr. Hunt and disclosed personal financial information about Mr. Hunt to them in an effort to embarrass and coerce Mr. Hunt to pay this debt he did not owe thereby invading Mr. Hunt's right to privacy by intrusion

upon his seclusion.

Additionally, once Mr. Hunt began declining the calls of 21st Mortgage, the collectors of 21st Mortgage attempted to conceal their identities by calling Charles Hunt from blocked numbers and from the collectors' personal cellular telephones in order to trick Mr. Hunt into answering their collection calls.  All of these actions by Defendant constitute an invasion of his privacy by unlawfully intruding upon Plaintiff's seclusion.  Mr. Hunt seeks compensatory damages and punitive damages, fees and costs as allowable under the law.

(d) <u>Defendants' Defenses</u>.

1. <u>TCPA DEFENSES:</u>   The Telephone Consumer Protection Act ("TCPA") provides that it shall be unlawful for any person …to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…(iii) to any telephone number assigned to a … cellular telephone service…for which the called party is charged for the call.." 47 U.S.C. § 227(b)(1)(iii).  "The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  21st Mtg. did not utilize an "automatic telephone dialing system" ("ATDS") and therefore 21st Mtg. is not subject to the TCPA.  The telephone system in question is the Nortel Meridian Telephone System that was in use by 21st Mtg. from some time in 2000 or 2001 until August 11, 2012.  The Nortel Meridian Telephone System was not changed during the time it was used by 21st

Mortgage Corporation other than to add additional users and handsets.  The last call that Plaintiff alleges was made to him by 21st Mtg. occurred two to three days after August 12, 2011.  A new telephone system was installed by 21st Mtg. approximately one year later on or about August 11, 2012.  The new system was installed for business reasons.  There is absolutely no question that 21st Mortgage never purchased or utilized any software or equipment that could allow for "automatic dialing."  The Nortel Meridian system never had auto dialing capability or predictive dialing capability.  The Nortel Meridian system required the 21st Mortgage employees to manually dial telephone numbers.   Defendant's expert, Scott O'Neal, will testify that the Nortel Meridian CS1000 PBX utilized by 21st Mtg.  was an analog/digital phone system, meaning that is was not software based; that it did not have the capacity or capability of autodialing; and, that the Dell workstation attached to the CS1000 PBX is simply a low-end desktop computer that did not have the technical resources or software application to support autodialing.  21st Mtg. did not have an "automatic telephone dialing system," because the Nortel Meridian system did not have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator.  As such, 21st Mtg. is not subject to the TCPA.  Assuming arguendo that it is determined that 21st Mtg. was subject to the TCPA, it did not violate the TCPA in any telephone call that it placed to the Plaintiff.

      2. <u>INVASION OF PRIVACY DEFENSES:</u>  In order for a Plaintiff to sustain a claim for invasion of privacy, he "must show that the defendant's conduct was so outrageous that it caused the plaintiff mental suffering, shame, or humiliation."   See

Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1308-09 (11th Cir. 2007) (citing McIsaac v. WZEW–FM Corp., 495 So.2d 649, 651 (Ala.1986)).  See also Sparks v. Phillips & Cohen Associates, Ltd., 641 F. Supp. 2d 1234, 1252-53 (S.D. Ala. 2008) (discussing the "narrow, circumscribed reach of the tort of invasion of privacy."); Deutsche Bank Trust Co. Americas v. Garst, 2:11-CV-04027-WMA, 2013 WL 4851493 (N.D. Ala. Sept. 11, 2013) ("the evidence presented in this case is simply too sparse to justify moving the claim beyond summary judgment").  Any alleged conduct on the part of 21st Mtg. does not rise to the level of harassment necessary to sustain an invasion of privacy claim under Alabama Law.  In this matter, Plaintiff placed himself as the front man on this loan and took over the responsibility of making payments although not obligated to do so.  He initiated contact with 21st Mtg.  Plaintiff first had contact with 21st Mtg. when he personally called 21st Mtg. on September 30, 2005 to make a payment on the Installment Contract.  He made the payment out of his own personal bank account. Over the course of the several years of dealing with the account, Mr. Hunt, frequently dealt with the issues, including making payment promises, and directly authorizing electronic bank payments from his personal bank account to 21st Mtg., etc. On March 12, 2008, Amelia Hunt gave 21st Mtg. Mr. Hunt's cellular telephone number and told 21st Mtg. to call Mr. Hunt.  The majority, if not all, of the calls to make payments by Mr. Hunt were made from his cellular telephone.  Over all, Mr. Hunt made payments over the telephone on at least thirty occasions beginning in September of 2005 and ending in July of 2011.  The last payment was made by Mr. Hunt on July 18, 2011 when he called 21st

Mtg. and authorized a check by phone payment. The only written notice that Mr. Hunt claims to have given to 21st Mtg. requesting that it no longer contact him, was by an August 8, 2011, certified letter sent to 21st Mtg. by his wife. Mr. Hunt did not personally sign the letter and his name was not mentioned. The return receipt has August 12, 2011 as the date the letter was received by 21st Mtg. While claiming that, at times, he had stern conversations with other employees, Mr. Hunt admitted that 21st Mtg. never made any threats. No one from 21st Mtg. ever told Mr. Hunt that he was directly liable for the debt. Other than one occasion that Mr. Hunt alleges an employee told him to grow up and act like an adult, Mr. Hunt did not consider any other conversation out of line. No one ever cussed at him or raised their voice while speaking with him. He does not believe that anyone from 21st Mtg. ever misled him or provided him with false information and no one ever made any threats. Any alleged conduct on the part of 21st Mtg. does not rise to the level of harassment necessary to sustain an invasion of privacy claim under Alabama Law. In addition, Plaintiff waived any right to privacy that he may have had by continuously contacting 21st Mtg., and making himself the point of contact. See Bell v. Birmingham Broad. Co., 266 Ala. 266, 269, 96 So. 2d 263, 265 (1957); see also, Schifano v. Greene Cnty. Greyhound Park, Inc., 624 So. 2d 178, 181 (Ala. 1993).

    6. Discovery and other pretrial procedures.

        (a) The parties agree no further discovery is needed prior to the trial of this matter.

(b)  Pending discovery motions:  None.  Plaintiff does intend to renew his motion for a remedy for spoliation of evidence during pre-trial motions.

(c)  Plaintiff expects he will have to file a motion in limine prior to trial, in addition to his request for relief for spoliation by Defendant.  Defendant anticipates that it will have to file a Motion in Limine prior to trial.

7. *Trial (JURY). At least ten business days prior to the scheduled trial date, the parties must file a **single, joint proposed jury charge**, including all necessary instructions, or definitions applicable to the specific issues of the case. The parties need not submit standard generic instructions regarding routine matters; e.g., burden of proof, credibility of witnesses, duty of jurors, etc.

a.   In joint, proposed jury materials, counsel are to include all necessary instructions or definitions, specifically including (1) the *prima facie* elements of each cause of action and defense asserted; (2) legal definitions required by the jury; (3) items of damages; and (4) methods of calculation of damages. Counsel are to use the 11th Circuit Pattern Jury Instructions, or appropriate state pattern jury instructions, as modified by case law or statutory amendments, wherever possible. Any deviations must be identified, and accompanied with legal authorities for the proposed deviation.

b.   Even if the parties, in good faith, cannot agree on all instructions, definitions or questions, the parties should nonetheless submit a single, **unified** charge. Each disputed instruction, definition, or question should be set out in bold type, underline or italics and identified as disputed. Each disputed item should be labeled to show which party is requesting the disputed language. Accompanying each instruction that deviates from pattern charges shall be all authority or related materials upon which each party relies. The parties shall also submit a copy as an e-mail submission to coogler_chambers@alnd.uscourts.gov.

c.   If the verdict form will include special interrogatories for the jury to answer, counsel shall include such special interrogatories with their proposed jury instructions.

8. Trial Date. This case is set for jury trial on November 17, 2014.

**ORDERED** this 14th day of August, 2014, that the above provisions be binding on all parties unless modified by further order for good cause shown.

                                                   L. SCOTT COOGLER
                                    UNITED STATES DISTRICT JUDGE
                                                           I23966