FILED
2014 Nov-14  PM 05:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES HUNT,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:  2:12-cv-2697-LSC** |
| | ) | |
| **21ST MORTGAGE CORPORATION,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO
## PLAINTIFF'S REQUESTED SPOLIATION JURY INSTRUCTION

Defendant 21st Mortgage Corporation ("21st Mortgage") hereby submits its Brief in opposition to Plaintiff Charles Hunt's ("Plaintiff") requested jury instruction regarding spoliation.  As stated below, Plaintiff's request for sanctions is untenable under Eleventh Circuit law.

### 1. Background.

In early 2012—months before this suit was filed—21st  Mortgage made the business decision to upgrade its Nortel Meridian telephone system to a new, VOIP system.  (*See* **Exhibit A**, various e-mails concerning system upgrade; **Exhibit B**, February 14, 2012, Shortel Proposal; **Exhibit C**, March, 2012, I.S. Board Meeting slides; and **Exhibit D**, I.S. Infrastructure Improvements Presentation).  The implementation of this planned upgrade began in the middle of July 2012.  On August 11, 2012, the new, Shortel telephone system was "put live" and the

1

Nortel system was no longer used.  (**Exhibit E**, excerpts from Jim Collins Deposition, at pp. 17-18).

On December 18, 2011, Plaintiff's wife and former 21st Mortgage borrower Amelia Hunt ("Mrs. Hunt") filed a lawsuit against 21st Mortgage alleging similar claims to those brought here, including a TCPA claim. See Hunt v. 21st Mortgage Corp., No. 2:12-cv-381 (N.D. Ala. 2012). Amelia Hunt was represented by Plaintiff's current counsel, Mr. Phillips.  In Mrs. Hunt's action, Mr. Phillips did not raise any issues related to the preservation of the Nortel system and never requested to inspect the phone system.  Indeed, Mr. Phillips did not address any potential retention or preservation issues in the Rule 26(f) conference, nor did he discuss any intention to inspect 21st Mortgage's phone systems.

Plaintiff did not file the instant action until August 14, 2012, after the Nortel System had already been retired. (Doc. 1).  Again, at the Rule 26(f) conference in this matter, Mr. Phillips did not address any potential retention or preservation issues related to the phone system or discuss any intention to inspect 21st Mortgage's phone systems.   Though 21st Mortgage identified the Nortel system as the relevant telephone system on February 4, 2013 pursuant to Plaintiff's discovery request, Plaintiff made no mention of a potential inspection of the telephone system until he served a Notice of Rule 34 Inspection on July 3, 2013. *This was the first indication that Plaintiff intended to inspect the subject telephone system*.  By that time, the discovery cutoff date was only sixteen days away, on July 19, 2013, and the expert report deadline had long since expired on May 1, 2013.

Pursuant to the Court's order, Plaintiff's expert, Mr. Biggerstaff, conducted a Rule 34 inspection of the Nortel system on October 16, 2013.  At that time, 21st Mortgage had been

using its new VOIP telephone system for over a year; the Nortel system, however, had been retained and was stored at 21st Mortgage's offices, where Mr. Biggerstaff inspected it.

Plaintiff previously raised this spoliation issue in his Response to 21st Mortgage's Motion for Summary Judgment.  (Doc. 51, at pp. 24-32).  Judge Acker rejected Plaintiff's request for spoliation sanctions—including a requested adverse inference instruction—instead reserving the question for the jury.  (Doc. 57, at pp. 13-14).  Nonetheless, Plaintiff now again seeks to impose the extreme sanction of an adverse jury instruction regarding spoliation. Plaintiff apparently contends that 21st Mortgage spoliated the Nortel telephone system by implementing its planned telephone system upgrades *before this action was even filed*.  Plaintiff attempts to overcome this illogical position by contending that 21st's Mortgage's duty to preserve the system in use was triggered by the fact of Mrs. Hunt's lawsuit.  Most notably, Plaintiff has no actual evidence of any bad faith on the part of 21st Mortgage and, accordingly, cannot establish that *any* sanctions are available.

**2. Standard for Sanctions.**

As this Court knows, "'[s]poliation' is the 'intentional destruction, mutilation, alteration, or concealment of evidence.'" *Evans v. Mobile County Health Dept.*, 2012 WL 206141, at *10 (S.D. Ala. Jan. 24, 2011).  A party moving for sanctions for spoliation "must establish, among other things, that the destroyed evidence was relevant to a claim or defense such that the destruction of that evidence resulted in prejudice." *Eli Lilly & Co. v. Air Express Int'l USA, Inc.*, 615 F.3d 1305, 1318 (11th Cir. 2010).

Because spoliation sanctions are an evidentiary matter, federal law governs the imposition of sanctions.  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), *cert. denied*, 548 U.S. 903, 126 S.Ct. 2967, 165 L.Ed.2d 950 (2006).  Even though federal law

governs, Alabama District Courts look to consistent state law principles for guidance in determining whether sanctions should be awarded. *Danny Lynn Elec. V. Veolia Solid Waste*, 2012 WL786843, at *2 (M.D. Ala. March 9, 2012); *Evans*, 2012 WL 206141, at *10.

Before sanctions for spoliation can be awarded, however, the moving party must establish that evidence was intentionally spoliated by a party with a duty to preserve the evidence. *Andazola v. Logan's Roadhouse, Inc.*, 2012 WL 1745541, at *6, n.43 (N.D. Ala. May 15, 2012); *In re Delta/Airtran Baggage Fee Litig.*, 770 F. Supp. 2d 1299, 1309 (N.D. Ga. 2011); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (stating that "[a] party can only be sanctioned for destroying evidence that it had a duty to preserve") (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).[1]

### 3. Bad Faith.

As an initial matter, "an adverse inference is drawn from a party's failure to preserve evidence **only when the absence of that evidence is predicated on bad faith**." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (emphasis added). *See also, Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) ("An 'adverse inference instruction' is proper in civil cases where a party has failed to preserve evidence and there is a showing of bad faith in doing so."); *Silver v. Countrywide Home Loans, Inc.*, 483 F. App'x 568, 573 (11th Cir. 2012) (same); *Ladner v. Litespeed Mfg. Co.*, 537 F. Supp. 2d 1206, 1217 (N.D. Ala. 2008) (showing of willfulness or bad faith required for sanctions under Eleventh Circuit law). "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *Vick v. Texas*

---

[1] The cases cited by Plaintiff in its requested jury charge—*Brown v. Chertoff*, 563 F. Supp. 2d 1372, *Flury v. Daimler Chrysler Corp.*, 427 F. 3d 939, *Ladner v. Litespeed Mfg. Co.*, 537 F. Supp. 2d 1206 (N.D. Ala. 2008)—are all distinguishable from the instant facts and fail to support Plaintiff's request. First, the plaintiff in *Flury* was notified early on that the defendant wished to inspect the vehicle, yet allowed the vehicle to be sold. 427 F. 3d at 945. Accordingly, the movant in *Flury* presented highly probative evidence of bad faith, which is not present here. Next, in *Brown*, a Southern District of Georgia case, the evidence was destroyed seven months after the litigation had been filed. 563 F. Supp. 2d at 1381. Lastly, in *Lander*, no evidence of bad faith was found, and, accordingly, the request for sanctions was denied. 537 F. Supp. 2d at 1218.

*Employment Com'n*, 514 F.2d 734, 737 (5th Cir.1975) (*quoting* McCormick, Evidence § 273 at 660–61 (1972); 31A C.J.S. Evidence § 156(2) (1964)).  The party claiming spoliation must present "probative evidence" that the relevant materials were "purposely lost or destroyed." *Bashir*, 119 F.3d at 931.

Here, Plaintiff has no direct evidence of any actual bad faith on the part of 21st Mortgage whatsoever.  As set forth above, 21st Mortgage's transition to a VOIP telephone system from the Nortel system was a business decision that it made and carried out *prior to the filing of this action*.  In order to establish the bad faith necessary for an adverse inference sanction, Plaintiff must present "probative evidence" that the Nortel telephone system was purposefully spoliated by 21st Mortgage with the intent to prevent Plaintiff from inspecting its operation. *See Bashir*, 119 F.3d at 931; *Flury*, 427 F.3d at 944; *Evans*, 2012 WL 206141, at \*10 − 11, n. 19; *Goulah v. Ford Motor Co.*, 118 F.3d 1487 (11th Cir. 1997).[2]

Plaintiff has not presented any direct evidence of bad faith that even comes close to meeting this high burden, nor can Plaintiff present any sufficient evidence of bad faith.  Even if Plaintiff offers circumstantial evidence allegedly showing bad faith, any circumstantial evidence would be insufficient to show bad faith in the light of 21st Mortgage's planned telephone system upgrades. *See Penalty Kick Mgmt., Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) (circumstantial evidence insufficient to demonstrate bad faith necessary for adverse inference sanction); *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (party seeking sanctions must establish that the "affirmative act causing the loss

---

[2] The Committee on Rules of Practice and Procedure also recently approved amendments to Rule 37(e), which limit the availability of adverse inference sanctions.  In order to impose an adverse inference sanction, the proposed amended Rule 37(e) would require a finding that the party who failed to preserve ESI that could not be replaced through additional discovery "acted with the intent to deprive another party of the information's use in the litigation." Proposed Rule 37(e), *available at* http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Agenda%20Books/Standing/ST2014-05.pdf.

cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator"). Instead, evidence demonstrates that 21st Mortgage was in the process of upgrading its telephone system before Plaintiff filed this lawsuit. (*See* Exhibits A – D). Moreover, as set forth in more detail below, the Nortel system was never actually destroyed or significantly altered—just taken out of use—and was actually retained by 21st Mortgage, further demonstrating that 21st Mortgage did not act with any bad faith.

Without the requisite showing of bad faith, Plaintiff's request for an adverse inference sanction is unavailable, and the requested jury instruction must be denied on that ground alone. *Bashir*, 119 F.3d at 931 (adverse inference instruction allowed "*only* when the absence of . . . evidence is predicated on bad faith.") (emphasis added); *Securities and Exchange Comm'n v. Goble*, 682 F.3d 934, 947-48 (11th Cir. 2010) (upholding trial court's decision not to impose adverse inference instruction where movant failed to demonstrate that shredded records were destroyed in bad faith); *Rutledge v. NCL (Bahamas) Ltd.*, 464 Fed. Appx. 825, 829 (11th Cir. 2012) (upholding trial court's decision not to impose adverse inference instruction where movant failed to demonstrate that destruction of alcohol testing device was done in bad faith); *Ramsey v. Gamber*, 469 Fed. Appx. 737, 741 (11th Cir. 2012) (adverse inference sanction not available in the absence of evidence of bad faith).

### 4. Spoliation of the Nortel System.

In addition to being unable to show any bad faith, Plaintiff's request for an adverse inference instruction is further doomed because Plaintiff cannot demonstrate that any spoliation actually occurred, as the Nortel system was preserved by 21st Mortgage. In order to establish that spoliation occurred, Plaintiff must put forth evidence that the Nortel system was destroyed, mutilated, altered, or destroyed. *Evans*, 2012 WL 206141, at *10.

The Nortel system consists of handsets and a mainframe server.  On August 7, 2013, Plaintiff deposed Defendant's Network Administrator Jim Collins, who was involved in the upgrade from the Nortel system to the new Shortel VOIP system.  Mr. Collins testified that approximately 300 of the 500 telephone handsets were in storage and mainframe server remains in the closet at 21st Mortgage Corporation:

Q    * * * Where was that main frame located?
A    At headquarters.
Q    Do you still have that main frame?
A    Correct.
Q    Where is it located now?
A    At headquarters on the floor in its phone closet.
Q    Is it still in use?
A    It's powered off and has been since August 11th.
Q    Okay.  You can get to that main frame?
A    Yes, sir.
. . .
Q    Okay.  And you say that it's currently sitting on the second floor in your headquarters –
A    Correct.
Q    -- on Market Street?
A    Correct.
Q    And you could put your hands on it anytime you wanted to. Right?
A    Correct.
Q    Did anybody ever tell you not to destroy that main frame?
A    No.  Wait.  To not destroy it?
Q    Yes.
A    It's never been discussed to have it dismantled in any form without a sale.
Q    Okay.  Is it -- has it been sitting there for sale all this time?
A    Correct.

(Exhibit E, Collins, at pp. 29-30; 32-33).

Accordingly, the evidence demonstrates that the Nortel system is intact, and no spoliation has occurred.

Even to the extent that Plaintiff may contend that the Nortel device has been "altered" because it is no longer in service, spoliation sanctions are not warranted because 21st Mortgage

had no duty to halt its pre-existing plans to upgrade its phone system and keep the Nortel system in place.[3]  Here, 21st Mortgage's duty to preserve any evidence did not trigger until litigation with Plaintiff was pending or reasonably foreseeable—which was well after the decision to upgrade the phone system was made and after the new system had already been installed.  *See Andazola v. Logan's Roadhouse, Inc.*, 2012 WL 1745541, at *6, n.43 (N.D. Ala. May 15, 2012) (spoliation requires "pending or reasonably foreseeable litigation"); *Cont'l Cas. Co. v. Compass Bank*, 2006 WL 533510, (S.D. Ala. Mar. 3, 2006) (declining to impose sanctions for actions the defendant took  "prior to the filing of the instant law suit"); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve."); *Chirdo v. Mineral Techs., Inc.*, 2009 WL 2195135, at *3 (E.D. Pa. July 23, 2009) (holding that trigger date for defendant's duty to preserve is where plaintiff filed an EEOC charge, even when employees reviewed certain documents as "evidence in support of any future litigation" prior to that date).

To avoid the fact that the Nortel system was already retired by the time Plaintiff filed this action, Plaintiff apparently asks the Court to impute here any duty to preserve evidence 21st Mortgage may have owed to *Mrs. Hunt* by virtue of her prior, completely separate action.  First, a court in the Eleventh Circuit has rejected a similar novel imputation theory.  *In re Delta/Airtran Baggage Fee Litig.*, 770 F. Supp. 2d 1299, 1310 (N.D. Ga. 2011) ("[T]he Court is unwilling to conclude that upon service of a DOJ-issued CID, a duty to Plaintiffs to preserve

---

[3] To the extent Plaintiff suggests that 21st Mortgage should have halted or reversed the pre-planned telephone system upgrades due to the threat of future litigation from a single litigant *who did not request to inspect the system until more than a year after the system was replaced and more than two years after the upgrades were planned*, any such rule would be impractical and would impose an unreasonable burden on businesses. *See McLoed v. Wal-Mart Stores, Inc.*, 515 Fed. Appx. 806, 808 (11ᵗʰ Cir. 2013) (no bad faith where Wal-Mart recorded over security footage in the normal course that was not requested through discovery, though it had shown relevant events).

documents devolved upon Delta even though Plaintiffs did not file this action until three months later."). Moreover, as set forth above, Mrs. Hunt never requested to inspect the telephone system in the prior action or raised any issues related to the preservation of the telephone system. Plaintiff simply cannot rely on a duty to retain 21st Mortgage may have owed to a separate litigant. Accordingly, as 21st Mortgage had no duty to preserve it in the exact same condition it was in months before the filing of this action and actually retained the system, Plaintiff cannot demonstrate any spoliation of the Nortel telephone system.

### 5. Factors for Spoliation.

Lastly, even if Plaintiff could establish bad faith or that spoliation occurred (which he cannot), sanctions are not warranted because the other factors for sanctions that Alabama District Courts look to favor against an award of sanctions, which include (1) the importance of the destroyed evidence, (2) the culpability of the offending party, (3) fundamental fairness, (4) alternative sources of evidence available, and (5) the effectiveness of lesser sanctions. *Evans*, 2012 WL 206141, at *11 (quoting *Story v. RAJ Properties, Inc.*, 909 So.2d 797, 802–803 (Ala. 2005) (citation omitted)); *Danny Lynn Elec. V. Veolia Solid Waste*, 2012 WL786843, at *2 (M.D. Ala. March 9, 2012) (applying the factors in the context of a request for adverse inference instruction).

As set forth above, 21st Mortgage has no culpability for implementing and completing telephone system upgrades planned before this action was filed. Moreover, Plaintiff has not suffered any unfairness, as his expert was allowed to inspect the Nortel system, Plaintiff deposed 21st Mortgage's representative on the system, and 21st Mortgage produced multiple documents related to the function of the Nortel system. These alternative sources of evidence sufficiently allow Plaintiff to present his arguments related to the Nortel system.

**6. Conclusion.**

The precedent in the Eleventh Circuit requires a showing of bad faith as a prerequisite to an award of sanctions.  Here, Plaintiff can point to no evidence of any bad faith and, in fact, the evidence suggests that no spoliation even occurred.  Moreover, the other factors that Alabama District Courts look to favor against any imposition of sanctions, and especially against the extreme sanction of an adverse inference instruction.  Plaintiff was able to inspect the Nortel system and was provided with a multitude of other discovery on its operation.

**WHEREFORE, PREMISES CONSIDERED**, 21st Mortgage respectfully requests that the Court deny Plaintiff's requested jury charge related to spoliation.

Respectfully submitted,

/s/ James E. Mitchell, Jr.
DAVID M. WILSON  (ASB-1797-N71D)
JAMES E. MITCHELL, JR.  (ASB-9127-E62M)
Attorneys for the Defendant  21st Mortgage Corporation

OF COUNSEL:
WILSON & BERRYHILL P.C.
One Metroplex Drive, Suite 250
Birmingham, Alabama  35209
Telephone (205) 252-4441

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 14, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following.

Wesley Phillips, Esquire
Phillips Law Group, LLC
P.O. Box 362001
Birmingham, Alabama  35236

John G. Watts, Esquire
M. Stan Herring, Esquire
WATTS & HERRING, LLC
301 19th Street North
Birmingham, Alabama 35203

/s/ James E. Mitchell, Jr.
Of Counsel